IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:18-CV-27-FL

| | | |
|---|---|---|
| DR. JAMES MCKERNAN, Professor, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GRANT B. HAYES, Dean, College of | ) | |
| Education; EAST CAROLINA | ) | |
| UNIVERSITY; DONNA PAYNE, Vice | ) | |
| Chancellor, Legal Affairs East Carolina | ) | |
| University; CECIL STATON, Chancellor, | ) | |
| East Carolina University; RON | ) | |
| MITCHELSON, Provost; DR. LINDA | ) | ORDER |
| PATRIARCA, Professor - Department of | ) | |
| Special Education, Foundations and | ) | |
| Reading; MARYLYN SHEERER, Former | ) | |
| Dean and Provost; CHARLES COBLE, | ) | |
| Former Dean of Education East Carolina | ) | |
| University; HENRY PEEL, Former | ) | |
| Interim Dean; DR. GREGORY ALAN | ) | |
| HASTINGS; and LAKESHA ALSTON | ) | |
| FORBES, Director, Office of University & | ) | |
| Equity, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on pro se plaintiff's amended complaint, (DE 20), which the

court construes as a motion to amend, where plaintiff is precluded from filing an amended pleading

as a matter of course.[1]  It also comes before the court on defendants' motion to dismiss pursuant to

---

[1] Plaintiff filed complaint on February 16, 2018, and defendant Hayes moved for dismissal of the complaint
on April 23, 2019. Accordingly, under Federal Rule of Civil Procedure 15(a)(1), plaintiff's opportunity to amend the
complaint as a matter of course terminated 21 days thereafter; plaintiff filed amended complaint on June 22, 2018, 60
days thereafter.  However, pro se plaintiff requested from the court in filing amended complaint "that the Court please
accept this Amended Complaint with the addition of new defendants and the modification of 4 E. 'Facts of the case' and
Section 5 'Relief Sought.'" (DE 20 at 20).  The court construes this request as a motion to amend complaint.  The court

Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). (DE 53). Defendants' motion, vigorously opposed by plaintiff, is the subject of a separate motion to strike. (DE 57). The issues raised are ripe for ruling. For the reasons that follow, where plaintiff's motion to strike must fail, and his attempted amendments are futile, the court grants defendants' motion to dismiss.

## STATEMENT OF THE CASE

Plaintiff, a professor at East Carolina University ("ECU"), commenced this employment discrimination action on February 16, 2018, against defendant Grant B. Hayes ("Hayes"), dean of ECU's College of Education, asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., ("Title VII"); the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq., ("ADEA"); and the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., ("ADA"); Vietnam Era Veterans' Readjustment Assistance Act, 38 U.S.C. § 4211, et seq., ("VEVRAA"); and North Carolina General Statute § 116-41.18.

Plaintiff moved for summary judgment on March 20, 2018, arguing defendant Hayes failed to respond to complaint within 21 days and that plaintiff did not consent to an extension of time for defendant to so do. However, defendant Hayes had already moved for extension of time to file answer, informing the court that plaintiff did not consent, which motion was granted on March 9, 2018. The court denied plaintiff's motion for summary judgment on April 30, 2018.

On April 23, 2019, defendant Hayes filed motion to dismiss, arguing the above statutes provide for no individual liability, plaintiff failed to exhaust administrative remedies, plaintiff's claims are time-barred, and plaintiff failed to state a claim. On June 22, 2018, plaintiff filed

---

denies plaintiff's motion in that, as discussed more fully below, plaintiff's amendments are futile. See Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (en banc) (holding in part a court should freely grant leave to amend complaint unless amendment would be futile).

amended complaint and his response to the motion to dismiss, 1) providing additional facts to those found in plaintiff's complaint, 2) alleging a violation of the Due Process Clause to the United States Constitution, and 3) adding defendants ECU, Donna Payne, Cecil Staton, Ron Mitchelson, Marylyn Sheerer ("Sheerer"), Charles Coble ("Coble"), Henry Peel ("Peel"), Dr. Gregory Alan Hastings ("Hastings"), Linda Patriarca ("Patriarca"), and Lakesha Alston Forbes. All individual defendants are current or former employees of defendant ECU.[2]

On July 3, 2018, defendant Hayes, the only defendant served by this date, filed motion to dismiss plaintiff's amended complaint, addressing filings made by plaintiff on both June 22, 2018, and July 3, 2018. (See DE 24 at 2). Thereafter, remaining defendants were served. The instant motion to dismiss, joined in by all defendants including defendant Hayes, followed on September 5, 2018. On that same day, the court held the instant motion to dismiss mooted previous motions to dismiss in that all defendants had now appeared, all were represented by the same counsel, and all joined the instant motion to dismiss.

On September 24, 2018, plaintiff filed response in opposition to defendants' motion to dismiss. Plaintiff also filed the instant motion to strike defendants' motion to dismiss as being repetitive. (See DE 57 at 2; see also DE 62 at 1-2 ("Defendant's counsel has three times used the exact same claims when once would have sufficed.")).

### STATEMENT OF THE FACTS

Except as indicated otherwise, the following is a summary of the alleged facts as found in plaintiff's most recently filed amended complaint. (See DE 22-10).

---

[2] On July 2, 2018, plaintiff filed "full copy of my Amended Complaint," which plaintiff has indicated is his operative complaint. (DE 22 at 1; see DE 22-10). A comparison of the June 22, 2018 and July 3, 2018 documents reveal limited differences, and thus the court will treat plaintiff's July 2, 2018 filing as the operative complaint.

Plaintiff is 72 years old, a combat veteran of the Vietnam War, and has been disabled and physically handicapped with ambulatory dysfunction in walking since 2008. Additionally, plaintiff is an American and holds Irish citizenship and an Irish/European Union Passport. Plaintiff alleges generally that in the early 1990s, he was appointed to the Lora Wilson King Distinguished Professorship and Endowed Chair of Education ("King Chair") at ECU. Thereafter, he was wrongfully terminated from the position and failed to resecure it, even though he applied for the position four more times, the latest application occurring on January 15, 2017 ("2017 search"). He complains that he has not been afforded preference in hiring on the basis of his membership in multiple protected groups and that he has been subjected to a hostile work environment for 26 years.

More specifically, plaintiff alleges following appointment to the King Chair with permanent tenure in 1991 or 1992, plaintiff never resigned from the position voluntarily. Following a year's leave of absence approved without pay, plaintiff attempted to resume the King Chair but was not allowed in that "administrators at the College of Education believed and assumed that Plaintiff was not going to return." (DE 22-10 at 19-20). Instead, he could only return to defendant ECU as a "teaching professor." (Id.).[3] Upon his return, plaintiff "found his computer, library of personal books and documents and other personal property removed" (regarding which defendant Coble "feigned having no knowledge"), and promised funding revoked. (Id. at 21).

In 1994, plaintiff submitted a grievance, which the ECU grievance committee heard. (Id. at 20; see also DE 1-2 at 6). Plaintiff alleges that the ECU grievance committee found that plaintiff had been wrongfully removed from the King Chair, but that the chancellor and board of governors

---

[3] In original complaint, plaintiff states he was granted a year leave of absence without pay, and upon his return defendant Coble, former dean, "argued that [plaintiff] had tendered his resignation" from the King Chair, which plaintiff denies. (DE 1-2 at 2).

would not return him to the position. (DE 22-10 at 20; see also DE 1-2 at 6). Plaintiff alleges he appealed the grievance committee decision via "Administrative Review" to a court in Beaufort County, North Carolina, wherein the judge granted relief in favor of defendant ECU in 1995. (DE 22-10 at 20)

Regarding the 2017 search, plaintiff's application was denied, and plaintiff alleges this denial and the one before were both due to discrimination based on age. Plaintiff states the successful candidate was 34, black, and lacked plaintiff's qualifications and experience. The candidate was offered the position and declined. Plaintiff states defendant Hayes, who supervises plaintiff, is the administrator charged with hiring and promotions and that defendant Hayes's "decision in the final 2017 Search is profoundly connected to these claims made by Plaintiff." (Id. at 23). Plaintiff alleges that he "holds suspicion" that this candidate "was unfairly favored" by a black dean and that the office of equity and diversity at defendant ECU is "directed and staffed by black personnel." (Id. at 24-25). Plaintiff alleges "reverse discrimination." (Id. at 25).

Additionally, plaintiff complains he has endured a "hostile work environment" the past 26 years while employed by defendant ECU. Plaintiff also alleges he has filed nine grievances as a result of "continuing discrimination" arising out of his employment, eight of which have been found in plaintiff's favor. (Id. at 17).

Plaintiff alleges at some point his son was subjected to an inappropriate telephone interview,[4] a transcript of which was placed in plaintiff's personnel file, thereafter purged in 2002. Plaintiff

---

[4] Plaintiff clarifies in later briefing this alleged telephone interview was conducted by an associate dean at ECU not currently a party to this lawsuit. (See DE 58 at 6 ("An Associate Dean (John Swope) made an intimidating recorded telephone call to Plaintiffs son, aged nine years in attempts to glean details of Plaintiffs personal relationship with his landlord. Plaintiff was astonished to find the transcript of this call in his ECU Personnel File.")).

additionally alleges defendant Hastings multiple times verbally assaulted plaintiff, calling him "a damn joke" and stating "here you are and you are overpaid." (Id. at 21).

After defendant Coble left ECU, defendant Sheerer, also now a former dean, "removed Professor McKernan from the Grievance Award office given him by the Chancellor saying it was 'too large' for Plaintiff," placing plaintiff "in a windowless dark internal office – a sort of locker storage space for janitors." (Id. at 22). Defendant Sheerer additionally declined to allow plaintiff to attend a faculty workshop, though he permitted all other eligible personnel to attend. Plaintiff alleges defendant Sheerer did not address plaintiff's concerns and defendant Peel, a former interim dean, "refused to accept mediation," resulting in plaintiff's grievances not being addressed. (Id.).

Defendant Patriarca, an ECU professor, singled plaintiff out, denying him his rightful allowance to pay for transportation and accommodation at an international conference, held annually in Ireland, in the 2010 – 2012 period. Plaintiff alleges, in grievance hearing concerning this issue, defendant Patriarca stated "it wouldn't look right to be traveling abroad in time of recession." (Id. at 24).

## DISCUSSION

A.    Standard of Review

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Such motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Where a defendant raises a "facial challenge[] to standing that do[es] not dispute the jurisdictional facts alleged in the complaint," the court accepts "the facts of the complaint as true as [the court] would in context of

6

a Rule 12(b)(6) challenge." <u>Kenny v. Wilson</u>, 885 F.3d 280, 287 (4th Cir. 2018).  When a defendant

challenges the factual predicate of subject matter jurisdiction, a court "is to regard the pleadings'

allegations as mere evidence on the issue, and may consider evidence outside the pleadings without

converting the proceeding to one for summary judgment."  <u>Richmond, Fredericksburg & Potomac</u>

<u>R. Co. v. United States</u>, 945 F.2d 765, 768 (4th Cir. 1991).  The nonmoving party in such case "must

set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists."

<u>Id.</u>

Federal Rule of Civil Procedure 12(b)(2) allows for dismissal of a claim for lack of personal

jurisdiction.  "When a district court considers a question of personal jurisdiction based on the

contents of a complaint and supporting affidavits, the plaintiff has the burden of making a prima

facie showing in support of its assertion of jurisdiction."  <u>Universal Leather, LLC v. Koro AR, S.A.</u>,

773 F.3d 553, 558 (4th Cir. 2014).  At this stage, the court "must construe all relevant pleading

allegations in the light most favorable to plaintiff, assume credibility, and draw the most favorable

inferences for the existence of jurisdiction."  <u>Combs v. Bakker</u>, 886 F.2d 673, 676 (4th Cir. 1989);

<u>see</u> <u>Mylan Labs., Inc. v. Akzo, N.V.</u>, 2 F.3d 56, 60 (4th Cir. 1993)( "[T]he district court must draw

all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's

favor.").

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v.</u>

<u>Iqbal</u>, 556 U.S. 662, 663 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).

"Factual allegations must be enough to raise a right to relief above the speculative level."  <u>Twombly</u>,

550 U.S. at 555.  In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as

true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

Courts must liberally construe pro se complaints, and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, courts "cannot ignore a clear failure to allege facts" that set forth a cognizable claim. Johnson v. BAC Home Loan Servicing, LP, 867 F. Supp.2d 766, 776 (E.D.N.C. 2011). "The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed." Weller v. Dep't of Soc. Servs. for the City of Baltimore, 901 F.2d 387, 391 (4th Cir. 1990).

B.    Analysis

As stated above, plaintiff brings claims pursuant to Title VII, ADEA, ADA, VEVRAA, and North Carolina General Statute § 116-41.18 as well asserting a Due Process claim. Plaintiff has also asserted "additional claims" in opposition to defendants' motion to dismiss. (See DE 58). The court will address first plaintiff's motion to strike and then defendants' motion to dismiss, addressing in that context each of plaintiff's claims in turn.[5]

1.    Plaintiff's Motion to Strike (DE 57)

Plaintiff moves the court to strike defendants' motion to dismiss, pursuant to Federal Rules of Civil Procedure 12(f) and 12(g)(2). (See DE 57, DE 62). Rule 12(f) allows the court on its own

---

[5]  In assessing the plaintiff's claims below, the court addresses all relevant facts alleged in both plaintiff's complaint and most recently filed amended complaint.

or upon motion to strike from a pleading redundant matter. Rule 12(g)(2) provides generally that when a party makes a motion under Rule 12, that party must not make another motion under Rule 12 raising a defense or objection that was available to the party but omitted from its earlier motion.

In this case, plaintiff filed complaint, to which defendant Hayes filed motion to dismiss. Thereafter, plaintiff filed amended complaint out of time, to which defendant Hays filed timely motion to dismiss plaintiff's amended complaint. Thereafter, plaintiff served remaining defendants, and in response, defendants filed instant motion to dismiss plaintiff's amended complaint, which the court specifically allowed in order entered September 5, 2018. Plaintiff's motion is denied.[6]

    2.       Defendants' Motion to Dismiss (DE 53)

        a.       Title VII and ADEA Claims

Plaintiff has asserted claims based on national origin, age, and race discrimination under Title VII and the ADEA for the following: failure to promote, unlawful termination, retaliation, and hostile work environment. The court will first address claims barred as being outside the scope of plaintiff's EEOC charge and as untimely. The court will then address plaintiff's remaining claims under Title VII and the ADEA for failure to promote based on age and race discrimination.

        i.       Claims Outside Scope of EEOC Charge

Under Title VII and the ADEA, plaintiff must exhaust his administrative remedies by first filing a charge with the EEOC, and the "scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents." Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009). "[A] failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim

---

[6] Plaintiff additionally moves the court to strike defendant Hayes' motion to dismiss plaintiff's amended complaint. (See DE 57). Because the court had previously held that motion moot, the court denies this request.

9

deprives the federal courts of subject matter jurisdiction over the claim," and "[t]he same is true of claims made under the ADEA." Id. at 300-301.

On June 28, 2017, plaintiff filed charge with the EEOC stating in full as follows:

I.    On or January 1, 1992, I began employment with the above named Respondent. I am in the position of Professor.

II.    On or around January 15, 2017, I reapplied for the Lora King Chair Distinguished Professor position, a position I once held in 1992.  On or around March 23, 2017, I re-interviewed for the position.  To date, I have not received a response to my application. Therefore, I believe I was denied promotion.

III.    I believe I have been discriminated against, because of my age (71), and disabilities, in violation of the Age Discrimination in Employment Act of 1967, as amended and Title I of the Americans with Disabilities Act, of 1990, as amended.

(DE 1-3; DE 20-5).

In addition, plaintiff has filed with the court "EEOC Supplement to Complaint," (see DE 1-2; DE 20-4), which plaintiff states was sent to the EEOC, (see DE 1 at 5), which contains a more detailed recounting of the facts alleged by plaintiff.  In this document, plaintiff alleges "Race, Age and . . . disability" were "significant factors driving" the decision to turn down plaintiff's January 2017 application for the King Chair.  (DE 1-2 at 1; see also id. at 2 ("I am claiming that Age, Disability and Veteran Status have been used to deny me the past four applications made for the King Chair."))[7]

Defendants argue plaintiff is barred from bringing his Title VII claims based on national origin discrimination and Title VII and ADEA claims based on hostile work environment because he failed to exhaust his administrative remedies for those claims.

---

[7] The court assumes without deciding the "EEOC Supplement to Complaint" was submitted to the EEOC with plaintiff's charge and is a part of plaintiff's charge.

While the court recognizes "that EEOC charges often are not completed by lawyers and as such must be construed with utmost liberality," the court cannot "read into administrative charges allegations they do not contain." Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 408 (4th Cir. 2013). Plaintiff's charge contain no mention of national origin discrimination, which fails to provide "the employer with adequate notice and result[s] in a failure to investigate by the responsible agency," the very reasons for the requirement of administrative exhaustion. Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996). In this case, plaintiff failed to allege anything in his charge that would give an indication that he would later pursue a national origin claim. Therefore, plaintiff's national origin claim is outside the scope of his charge and is barred.[8]

However, plaintiff alleged sufficient facts in his charge to support his hostile work environment claims, notwithstanding not stating the specific words "hostile work environment," where plaintiff alleged as follows in his "EEOC Supplement to Complaint":

> The present complaint is related to the non-response to my application, interview and Faculty Presentation for the Chair in March of 2017. I believe there exists a culture of oppression, harassment and intimidation against me in the College of Education . . . . I realize it is years since I made my original complaint in 1994 but I have been continuously harassed, intimidated, denied opportunities etc. since then . . . . This abuse and harassment has never ended for me here at ECU.

(DE 1-2 at 2-3, 7).

---

[8] Plaintiff appears to concede as much, stating "Plaintiff is qualified to plead discrimination based on 'national origin' yet Counsel is correct that he neglected to claim National Origin in his EEOC complaint." (DE 22-10 at 23).

Thus, plaintiff's claims based on national origin discrimination are barred as falling outside the scope of plaintiff's EEOC charge but plaintiff's hostile work environment claims are not so barred.[9]

ii.      Timeliness of Claims

Charges filed with the EEOC must be filed within 180 days of each discrete adverse employment action described in the complaint or within 300 days of such when plaintiff had previously filed with certain state authorities not applicable here. See, e.g., 42 U.S.C. § 2000e–5(e)(1); 29 U.S.C. § 626(d); Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) ("Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180– or 300–day time period after the discrete discriminatory act occurred"). Therefore, because plaintiff filed his charge on June 28, 2017, all allegedly discriminatory acts occurring more than 180 days prior, or December 30, 2016, are time-barred.

Construing all well-pled facts in light most favorable to plaintiff, plaintiff's claims for failure to promote based on race and age discrimination occurred within the 180-day window before plaintiff filed his charge where plaintiff alleges he reapplied for the King Chair on January 15, 2017, and was denied. However, plaintiff's remaining Title VII and ADEA claims are time-barred to the extent discussed below.

First, plaintiff's claim relating to unlawful termination, regarding his termination from the King Chair in the early 1990s, is time-barred. Second, plaintiff's claims relating to retaliation are

---

[9] Additionally, even if plaintiff's national origin claim did not fall outside the scope of plaintiff's EEOC charge, such claim would be untimely in that plaintiff's only claim regarding discrimination based on national origin concerns denial of his request for "allowance to pay for transportation and accommodation at an international conference, held annually . . . in 2010-2012 period." (See DE 22-10 at 23). Therefore, the court dismisses plaintiff's national origin discrimination claim with prejudice.

time-barred to the extent these allegations concern events occurring prior to December 30, 2016. (See DE 22-10 at 21 (alleging retaliation when plaintiff returned to ECU in the early 1990s and discovered his personal property removed and funding altered); id. (alleging retaliation when son was contacted, transcript was placed in personnel file, and then transcript was purged in 2002); see also DE 58 at 7 (alleging retaliation as "evidenced by numerous rejections for his applications for return to his King Distinguished Chair.")).[10]

Regarding plaintiff's hostile work environment claims, plaintiff argues that these claims are saved under the doctrine of "continuing violation." (See, e.g., DE 22-10 at 13). "In general, to establish a continuing violation[,] the plaintiff must establish that the unconstitutional or illegal act was a fixed and continuing practice." A Soc'y Without A Name v. Virginia, 655 F.3d 342, 348 (4th Cir. 2011) (citing Nat'l Adver. Co. v. City of Raleigh, 947 F.2d 1158, 1166 (4th Cir.1991)). However, "continual unlawful acts are distinguishable from the continuing ill effects of an original violation because the latter do not constitute a continuing violation." Id. If there is a continuing legal violation by a defendant, that can start the statute of limitations anew for each additional violation. See id. As stated by the Supreme Court, while discrete discriminatory or retaliatory acts

---

[10] Plaintiff additionally alleges retaliation when defendant Sheerer removed plaintiff from this office, and although it appears this event occurred many years ago, plaintiff does not provide a specific year. (See DE 22-10 at 22). To the extent this event occurred in the relevant 180-day window, the court holds plaintiff has failed to state a claim regarding this event. To demonstrate retaliation, plaintiff must show: 1) engagement in a protected activity; 2) a materially adverse action; and 3) a causal link between the protected activity and the employment action. Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir.2010) (citation omitted); see Johnson v. Mechanics & Farmers Bank, 309 F. App'x 675, 684 (4th Cir. 2009) (same in ADEA context). Here, plaintiff alleges no engagement in a protected activity connected to this event. For example, for Title VII purposes, protected activity is conduct "oppos[ing] any practice made an unlawful employment practice[.]" 42 U.S.C. § 2000e-3(a). Protected activity is expansive and "encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998) (emphasis added). Plaintiff states only "[w]hen plaintiff returned to ECU [in early 1990s] Dean Coble feigned having no knowledge" of the whereabouts of plaintiff's property which was "naked retaliation for coming back and not allowing Coble to have his way," and thereafter "Dean Marylyn Sheerer took up the retaliations after Coble was gone," by removing plaintiff from his office. (DE 22-10 at 21-22).

are time-barred if the charge is not filed within the statutory time period, a hostile work environment claim is timely "so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." Morgan, 536 U.S. at 122.

Plaintiff alleges no act which constitute a claim under Title VII or the ADEA falling within the relevant time period nor unconstitutional or illegal acts under Title VII or the ADEA that were "a fixed and continuing practice." Virginia, 655 F.3d at 348. Instead, plaintiff alleges separate incidents of alleged harassment by separate individuals, spanning decades, none of which are connected to either plaintiff's age or race. Accordingly, plaintiff's hostile work environment claims are not saved under the continuing violation doctrine.[11]

In sum, plaintiff's claims for unlawful termination, retaliation, and hostile work environment under Title VII and the ADEA based on events occurring prior to December 30, 2016, are barred as falling outside the applicable limitations period and are therefore dismissed with prejudice. Any remaining Title VII and ADEA claims for unlawful termination, retaliation, and hostile work environment are dismissed without prejudice for failure to state a claim.

iii.     Failure to Promote under Title VII and ADEA

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race,

---

[11] Even if plaintiff's hostile work environment claims were timely, plaintiff has failed to sufficiently state such a claim. Under both Title VII and the ADEA, to state a hostile work environment claim, plaintiff must allege sufficient factual allegations to support a plausible claim that: 1) he experienced unwelcome harassment; 2) the harassment was based on race or age; 3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and 4) there is some basis for imposing liability on the employer. Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003). As stated above, none of the harassment plaintiff describes has any connection to plaintiff's race or age.

color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The ADEA provides that "[i]t shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). The ADEA creates a cause of action for federal employees over the age of 40 who allege discrimination on the basis of age. See 29 U.S.C. § 633a.

To prevail on a disparate treatment claim for failure to promote, plaintiff must establish that he was treated less favorably because of his race or age. The elements of a prima facie case under Title VII and the ADEA are the same. See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004). Here, in order to establish a prima facie case based on race or age discrimination in promotions under Title VII and the ADEA, plaintiff follows the burden-shifting framework outlined by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this framework, plaintiff can establish a prima facie case by showing that 1) he is a member of a protected group; 2) he applied for the position in question; 3) he was qualified for that position; and 4) the defendants rejected his application under circumstances that give rise to an inference of unlawful discrimination. See McDonnell Douglas Corp., 411 U.S. at 802; Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005) (citations omitted).

The court focuses on the fourth element. Plaintiff offers the following in support of his discrimination claims that he argues gives rise to an inference of unlawful discrimination: 1) the King Chair position in 2017 was offered to another candidate who was younger and black and did not have plaintiff's qualifications and experience, 2) plaintiff "holds suspicion" that this candidate "was unfairly favored" by a black dean, and 3) the office of equity and diversity at defendant ECU

is "directed and staffed by black personnel." (DE 20-10 at 24-25). These allegations are insufficient to state a claim under either Title VII or the ADEA.

Plaintiff may be more qualified than the candidate chosen; however, plaintiff "cannot choose the criteria by which an employer makes a promotion decision," nor does the court "sit as a super-personnel department weighing the prudence of employment decisions made by the defendants." Anderson, 406 F.3d at 270, 272 (citations omitted).

Absent allegations of superior qualifications, plaintiff alleges only that the candidate was younger than plaintiff, which, without more, is insufficient to state a claim under the ADEA. Plaintiff has demonstrated he was not given the King Chair, as he had not been given the position three previous times, and that eventually a younger person was offered the position. However, plaintiff has done nothing to suggest that the decision was motivated by the relative ages of the applicants. Indeed, plaintiff's allegation that he was turned down for the position based on age discrimination only two out of the four times he has applied undercuts this assertion. See Buchhagen v. ICF Intern., Inc., 650 Fed.Appx. 824, 830 (4th Cir. 2016) (citation omitted) ("The ADEA is intended to prevent discrimination based on age, not to confer increased status upon those who become older."); Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 512 (4th Cir. 1994) (The ADEA is not "a strict seniority protection mechanism.").

Likewise, plaintiff's allegations that the candidate was favored for being black by black decision makers without more is insufficient to state a claim under Title VII. As stated by the Court of Appeals for the Fourth Circuit:

> The allegations that [the employer] did not hire [plaintiff] because its decision makers were biased is simply too conclusory. Only speculation can fill the gaps in [plaintiff's] complaint – speculation as to why two "non-Black candidates" were selected to fill the positions instead of [plaintiff]. While the allegation that non-Black

decisionmakers hired non-Black applicants instead of plaintiff is <u>consistent</u> with discrimination, it does not alone support a <u>reasonable inference</u> that the decisionmakers were motivated by bias . . . . In short, [plaintiff's] complaint stopped short of the line between possibility and plausibility of entitlement to relief.

<u>McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.</u>, 780 F.3d 582, 586 (4th Cir. 2015) (emphasis in original) (citations omitted) (dismissing plaintiff's Title VII discrimination claims at 12(b)(6) stage).[12]

Plaintiff's claims for failure to promote under Title VII and the ADEA are dismissed without prejudice.[13]

        b.     ADA Claim

The ADA "prohibits employers from 'discriminating against a qualified individual on the basis of disability in regard to the hiring, advancement, or discharge of employees.'" <u>Gentry v. E. W. Partners Club Mgmt. Co. Inc.</u>, 816 F.3d 228, 236 (4th Cir. 2016) (quoting 42 U.S.C. § 12112(a)). "To establish a claim for disability discrimination under the ADA, a plaintiff must prove (1) that she has a disability, (2) that she is a 'qualified individual' for the employment in question, and (3) that her employer discharged her (or took other adverse employment action) because of her disability." <u>Jacobs v. N.C. Admin. Office of the Courts</u>, 780 F.3d 562, 572 (4th Cir. 2015) (citation omitted).

Plaintiff makes no reference to treatment plaintiff received based on his disability beyond stating as follows: "I am severely disabled and suffer from ambulatory dysfunction and PTSD. I

---

[12] To the extent plaintiff alleges a retaliation claim connected with plaintiff's claim for failure to promote him to the King Chair in 2017, such claim fails. (<u>See</u> DE 58 at 7 ("retaliations were evidenced by numerous rejections to his applications for return to his King Distinguished Chair.")). As stated above, to demonstrate retaliation, plaintiff must show: 1) engagement in a protected activity; 2) a materially adverse action; and 3) a causal link between the protected activity and the employment action. <u>Coleman</u>, 626 F.3d at 190 (citation omitted); <u>see Johnson</u>, 309 F. App'x 675 at 684. Here, plaintiff alleges no engagement in a protected activity in any way connected to him not being promoted to the King Chair in 2017.

[13] Given the court's holdings above, it is unnecessary for the court to address arguments as to whether individual defendants in this case qualify as "employers" for the purpose of Title VII and ADEA liability.

have been discriminated with my condition as if you enquire – the College of Education elevator has been often out of service most of the past ten years! My office is on the third Floor . . . ." (DE 20-4 at 3; see also DE 22-10 at 23 ("Plaintiff contends after discussions with both Search Committees in 2016 and 2017 that Plaintiff was [not] accorded any preference for Affirmative Action under his covered protected areas of Veterans Status; Age & Disability.")).

Plaintiff fails to state a claim under the ADA where plaintiff does not allege defendants took adverse employment action against plaintiff because of his disability. Plaintiff's ADA claim is therefore dismissed without prejudice.[14]

c.      VEVRAA Claim

Plaintiff's VEVRAA claim is based on the following:

> The United States has an obligation to assist veterans of the Armed Forces in readjusting to civilian life. The Federal Government is also continuously concerned with building an effective work force, and veterans constitute a uniquely qualified recruiting source. It is, therefore, the policy of the United States and the purpose of this section to promote the maximum of employment and job advancement opportunities within the Federal Government for qualified covered veterans (as defined in paragraph (2)(B)) who are qualified for such employment and advancement.

38 U.S.C. § 4214(a)(1). "The term 'department or agency' means any agency of the Federal Government or the District of Columbia, including any Executive agency as defined in section 105 of title 5 and the United States Postal Service and the Postal Regulatory Commission, and the term 'department, agency, or instrumentality in the executive branch' includes the United States Postal Service and the Postal Regulatory Commission." 38 U.S.C. § 4211(5).

---

[14] Given the court's holding above, it is unnecessary for the court to address arguments as to whether individual defendants in this case qualify as "employers" for the purpose of ADA liability.

Defendants argue that the plain language of 38 U.S.C. § 4214 and 38 U.S.C. § 4211 states that VEVRAA applies to federal agencies, and plaintiff's claim under VEVRAA must be dismissed because plaintiff has brought suit against defendants who are not a federal agency nor employees of a federal agency.

Plaintiff, however, argues that "ECU, like other State Universities, is a 'Federal Contractor' with millions of dollars of Federal funds allocated making them liable to Federal employment discrimination laws." (DE 58 at 18). Indeed, 38 U.S.C. § 4212(a)(1) provides as follows:

> Any contract in the amount of $100,000 or more entered into by any department or agency of the United States for the procurement of personal property and nonpersonal services (including construction) for the United States, shall contain a provision requiring that the party contracting with the United States take affirmative action to employ and advance in employment qualified covered veterans.

The court need not resolve this issue. Even assuming defendant ECU is a federal contractor subject to the requirements of VEVRAA, the Fourth Circuit has held as follows:

> In Count V, Armstrong claimed that Defendants purposefully engaged in discrimination of a disabled Vietnam veteran by harassing and discriminating against him by denying him reasonable accommodation and by terminating him. We find that the district court properly dismissed this claim pursuant to Rule 12(b)(6) because there is no private cause of action against federal contractors under § 402 of the Vietnam Era Veterans' Readjustment Assistance Act of 1974, 38 U.S.C. § 4212 . . . .

Armstrong v. Rolm A. Siemans Co., No. 97-1222, 1997 WL 705376 (4th Cir. Nov. 13, 1997). Other circuits have more recently held the same. See, e.g., Matula v. Lower Colorado River Auth., 134 F. App'x 715, 716 (5th Cir. 2005) (affirming dismissal of VEVRAA claims "because the statute does not provide a private cause of action and instead permits only administrative remedies through the Department of Labor"); Seay v. Tennessee Valley Auth., 339 F.3d 454, 473 (6th Cir. 2003) (same).

Accordingly, the court dismisses plaintiff's claim brought pursuant to VEVRAA; because there is no private remedy for plaintiff under VEVRAA, this claim is dismissed with prejudice.[15]

        d.     Claim arising under North Carolina General Statute § 116-41.18

North Carolina General Statute § 116-41.18 states in relevant part as follows:

(a) Each constituent institution that receives, through private gifts and an allocation by the Board of Governors, funds for the purpose shall, under procedures established by rules of the Board of Governors and the board of trustees of the constituent institution, select a holder of the Distinguished Professorship. <u>Once given, that designation shall be retained by the distinguished professor as long as he remains in the full-time service of the institution as a faculty member,</u> or for more limited lengths of time when authorized by the Board of Governors and the board of trustees at the institution when the Distinguished Professorship is originally established or vacated. When a distinguished professorship becomes vacant, it shall remain assigned to the institution and another distinguished professor shall be selected under procedures established by rules of the Board of Governors and the board of trustees of the constituent institution . . . .

The plain language of this statute provides for no separate cause of action created by this statute. No court has determined that a separate cause of action exists because of this statute. In fact, no court has cited this statute. Additionally, even if this court found a violation of this statute, in either tort or contract, the North Carolina statue of limitations for either would be three years. <u>See</u> N.C. Gen. Stat. § 1-52. Under either statute of limitations, plaintiff is barred from bringing a claim that he was wrongfully removed from the King Chair position in the early 1990s.

Plaintiff's claim pursuant to North Carolina General Statute § 116-41.18 is dismissed with prejudice.

        e.     Due Process Claim

---

[15] The court additionally notes that at no point does plaintiff allege that he was denied any employment opportunity, was discriminated against, or was retaliated against, based on his veteran status.

Plaintiff alleges that he "was not given due process or fair treatment in ECU modifying his King Chair Contract unilaterally," in the early 1990s. (DE 20 at 12; see also DE 58 at 15 ("Plaintiff was also denied due process – a 5th and 14th Amendment constitutional right when his employment contract was changed without his agreement)).

The Fourteenth Amendment prohibits the States from "depriv[ing] any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. Due process under the Fourteenth Amendment contains both substantive and procedural components.[16] To establish a procedural due process claim, a plaintiff must plausibly allege that he 1) had a constitutionally cognizable life, liberty, or property interest; 2) he was deprived of that interest by some form of state action; and 3) without due process of law. See Sansotta v. Town of Nags Head, 724 F.3d 533, 540 (4th Cir. 2013).

First, plaintiff has failed to allege a constitutionally cognizable property interest in the King Chair in the early 1990s. See, e.g., Jenkins v. Weatherholtz, 909 F.2d 105, 107 (4th Cir. 1990) (citing Bishop v. Wood, 426 U.S. 341, 345 & n. 8 (1976)) ("A local government employee serving 'at the will and pleasure' of the government employer has no legitimate expectancy of continued employment and thus has no protectible property interest.").

Additionally, even if the court assumes such an interest, plaintiff's allegations show he was not deprived of such without due process of law. Rather, his allegations show that he had adequate post-deprivation review to satisfy due process requirements, first with the ECU grievance committee

---

[16] It does not appear that plaintiff brings a substantive Due Process claim. To the extent plaintiff does, such claim fails. Here, the "threshold question" of such a claim would be "whether the challenged conduct was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Hawkins v. Freeman, 195 F.3d 732, 738 (4th Cir. 1999) (citations omitted). Here, the court cannot say plaintiff has alleged facts that show conduct that "shocks the conscience."

and then subsequent judicial review in Beaufort County, North Carolina. See, e.g., Ruttenberg v. Jones, 283 F. App'x 121 (4th Cir. 2008) (holding existence of established procedures available under state law defeated any due process claim where plaintiffs were entitled to judicial review of a decision revoking their license and permit and where plaintiffs had opportunity to challenge the evidence against them).[17]

Plaintiff's Due Process claim is dismissed without prejudice.

### f. Additional Claims

In plaintiff's response in opposition to defendants' motion to dismiss, filed over three months after plaintiff filed amended complaint, plaintiff states additional claims, some of which have been previously addressed by the court, but which also appear to allege violations of multiple North Carolina statutes previously not asserted by plaintiff. (See DE 58 at 5, 14, 19-22 (citing N.C. Gen. Stat. §§126-14.3(3), (4) (requiring State Human Resources Commission to adopt rules requiring a closing date for certain posted job openings and timely written notice to certain unsuccessful applicants); id. § 126-16 (providing for equal opportunity for employment and compensation by state departments and agencies and local political subdivisions); id. § 126-17 (forbidding retaliation by state departments and agencies and local political subdivisions for protesting alleged violations of N.C. Gen. Stat. § 126-16); id. § 126-80 (providing for employment preference given to certain

_____

[17] To the extent plaintiff asserts a Due Process claim pursuant to the North Carolina constitution, a direct cause of action under the North Carolina Constitution is permitted only in circumstances where there is an "absence of an adequate state remedy." Corum v. University of North Carolina, 330 N.C. 761, 782 (1992). Thus, "[t]o assert a direct constitutional claim . . . a plaintiff must allege that no adequate state remedy exists to provide relief for the injury." Copper v. Denlinger, 363 N.C. 784, 788 (2010); see also Craig ex rel. Craig v. New Hanover Cty. Bd. of Educ., 363 N.C. 334, 340 (2009) (noting that "an adequate remedy must provide the possibility of relief under the circumstances." (emphasis added)). Here, plaintiff has failed to allege that he does not have an adequate state remedy, and instead has alleged he appealed the alleged modification of his contract to the ECU grievance committee and in subsequent judicial review in Beaufort County, North Carolina, and was ultimately unsuccessful.

eligible veterans); and id. §§127B-10, et seq. (forbidding discrimination against military personnel))).[18]

"To the extent plaintiff seeks to assert new claims . . . in his response to defendant's motion to dismiss, or any other filing, such claims are not properly before the court because plaintiff has not requested leave of court to amend his complaint pursuant to Federal Rule of Civil Procedure 15(a)." Evans v. Onslow Cty., N.C., No. 5:16-CT-3267-FL, 2017 WL 1900274, at *2 (E.D.N.C. May 8, 2017) (citing United States v. Jones, No. 87-7313, 1988 WL 21257, at *1 (4th Cir. Mar. 9, 1988) ("Even under liberal rules of interpretation, a court should not be required to amend a complaint sua sponte every time a pleading is filed which arguably raises a new claim.")). Accordingly, these claims are dismissed without prejudice.[19]

## CONCLUSION

For the foregoing reasons, the court DENIES plaintiff's motion to strike (DE 57). The court GRANTS defendants' motion to dismiss (DE 53), dismissing the following claims with prejudice: Title VII claim based on national origin discrimination, Title VII and ADEA race and age-based discrimination claims concerning events occurring prior to December 30, 2016; claim brought pursuant to VEVRAA, and claim brought pursuant to North Carolina General Statue § 116-41.18. The following claims are dismissed without prejudice: Title VII and ADEA race and age-based discrimination claims based on events occurring after December 30, 2016; ADA claim; Due Process

---

[18] Plaintiff argues that these "are not new claims" and "they revert back to general claims previously stated, i.e. theft of property, lack of due process, etc." (See DE 61 at 3). To the extent that is true, the court has previously addressed these claims and have dismissed them.

[19] Given the court's holdings above, it is unnecessary to address defendants' argument that plaintiff is not entitled to punitive damages. (See 54 at 23-24).

claim; claims brought pursuant to N.C. Gen. Stat. §§126-14.3(3), 26-14.3(4), 126-16, 126-17, 126-80, and 127B-10, et seq.  The clerk is DIRECTED to close the case.

SO ORDERED, this the 22nd of April, 2019.

LOUISE W. FLANAGAN
United States District Judge